```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

HAYDEE LILLY,

      Plaintiff,

v.                              Case No: 2:17-cv-345-FtM-99MRM

BAYVIEW LOAN SERVICING, LLC,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss (Doc. #15) filed on August 1, 2017. Plaintiff filed a Response in Opposition (Doc. #20) on August 25, 2017. A Reply (Doc. #26) and Sur-Reply (Doc. #28) were filed, as well as supplemental authority (Doc. #29). For the reasons set forth below, the Motion to Dismiss is denied.

**I.**

On June 20, 2017, plaintiff Haydee Lilly (plaintiff or Lilly) filed a four-count Complaint (Doc. #1) against defendant Bayview Loan Servicing, LLC (defendant or Bayview) alleging violations of the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72(9); and Sections 1692e(2)(1), 1692e(10), and 1692f of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. The claims are based on mortgage statements that Bayview sent plaintiff throughout December 2016 and February-March of 2017

(the Mortgage Statements) (Doc. #1-8). Plaintiff alleges the Mortgage Statements were sent for the improper purpose of collecting on a mortgage debt for which her personal liability had been discharged in bankruptcy.

Plaintiff's Complaint alleges the following: On or about November 9, 2006, plaintiff incurred a consumer debt in conjunction with a first mortgage to purchase property located in Fort Myers, Florida (the Subject Property). (Doc. #1, ¶ 6.) On or about January 26, 2010, plaintiff filed a voluntary Chapter 7 bankruptcy petition, listing the first mortgage as being owed to BAC Home Loans Servicing, LP. (Id. at ¶¶ 8-9.) Plaintiff indicated her intent to surrender the Subject Property in the bankruptcy proceedings. (Id. at ¶ 10.) Plaintiff received an order of discharge on May 24, 2010, which was mailed to BAC. (Id. at ¶ 14.)

Subsequent to the entry of the order of discharge, the mortgage debt at issue was sold to another party, and Bayview became the servicer of the debt on behalf of the new owner. (Doc. #1, ¶ 16.) In 2013, the Subject Property was sold at a foreclosure auction, and a Certificate of Title was issued to Hamlet Homeowner's Association[1] (Doc. #1-7).

---

[1] The condominium association foreclosed on a junior lien. The mortgage serviced by Bayview is the first mortgage on the Subject Property (Doc. #1, ¶ 9) and foreclosure of the junior lien does not affect the first mortgage. See Bank of America, N.A. v.

Defendant began sending the Mortgage Statements in December 2016. When Bayview sent the Mortgage Statements to plaintiffs, its mortgage had not been foreclosed and continued to encumber the Subject Property. Plaintiff responded with this lawsuit, claiming that defendant's actions constitute willful, intentional, gross, and flagrant violations of the FDCPA and FCCPA, alleging various physical and emotional injuries as a result. (Doc. #1, ¶¶ 23-24.)

Bayview moves to dismiss all claims, arguing that the Mortgage Statements do not constitute communications sent for debt-collection purposes in light of the Eleventh Circuit's recent opinion in Helman v. Bank of America, 685 F. App'x 723 (11th Cir. Apr. 12, 2017) (per curiam). Bayview also seeks dismissal because plaintiff failed to comply with the pre-suit notice and cure requirements of her mortgage agreement. In response, plaintiff argues that Helman is an unpublished case that has no precedential value, and the applicable case law supports her claim that the Mortgage Statements were sent for debt-collection purposes. In so arguing, plaintiff alleges that the Mortgage Statements included an amount due, a tear-off payment coupon with a due date, and a late fee if payment is not received by the due date. (Doc. #1, ¶¶ 18-21.) Plaintiff also responds that because the mortgage was discharged in bankruptcy, the contractual provisions in the

---

Kipps Colony II Condominium Ass'n, Inc., 201 So. 3d 670, 675 (Fla. 2d DCA 2016).

mortgage contract were no longer enforceable; therefore the mortgage's pre-suit notice and cure provisions are inapplicable here.

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."
Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.

### A. Related to Debt Collection

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692. To that end, debt collectors are prohibited, *inter alia*, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and from employing "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f. "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction (11 U.S.C. § 524), it is not." Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004). A post-discharge demand for payment is thus "presumptively wrongful under the [FDCPA]." Id.

Plaintiff contends that Bayview violated the FDCPA and FCCPA when it sent the Mortgage Statements in an attempt to collect on a debt it knew had already been discharged in plaintiff's bankruptcy proceeding.  "[I]n order to state a plausible FDCPA claim under § 1692e [and 1692f,] a plaintiff must allege, among other things, (1) that the defendant is a "debt collector" and (2) that the challenged conduct is related to debt collection."  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012).  The FCCPA is construed in accordance with the FDCPA.  Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 839 (11th Cir. 2010).  Thus, the issue currently before this Court[2] is whether the Complaint adequately alleges that the Mortgage Statement is "related to debt collection."[3]

Not all communications that a creditor sends a debtor regarding a discharged debt are "related to debt collection." Although the FDCPA does not expressly set forth what constitutes collection-related activity, the Eleventh Circuit has held that "if a communication conveys information about a debt and its aim

---

[2] Bayview has not conceded that it is a "debt collector" but does not challenge this element in the instant motion.

[3] In other words, the question is whether the Mortgage Statement constitutes a "dunning letter."  See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 n.7 (11th Cir. 2010) (per curiam) ("Since 'dunning' means 'to make persistent demands upon [another] for payment,' a 'dunning letter' may be considered as simply another name for a letter of collection." (alteration in original) (citation omitted)).

is at least in part to induce the debtor to pay, it falls within the scope of the Act." Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1302 (11th Cir. 2014) (citing Romea v. Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998)). Stated differently, a communication comes within the purview of the FDCPA where it is made with "an animating purpose of . . . induc[ing] payment by the debtor." Dyer v. Select Portfolio Servicing, Inc., 108 F. Supp. 3d 1278, 1281 (M.D. Fla. 2015) (quoting Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (citations omitted)).

The issue of whether a particular communication's animating purpose is to induce a debtor to pay is determined through the eyes of the "least sophisticated consumer."[4] See Caceres, 755 F.3d at 1303; LeBlanc, 601 F.3d at 1193, 1201. In making this determination, the district court must "look to the language of the [communication] in question, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered." Pinson v. Albertelli Law Partners LLC, 618 F. App'x 551, 553 (11th Cir. 2015) (per curiam) (citations omitted). The key question is whether "the least sophisticated consumer,"

---

[4] Nevertheless, "[c]ourts have interpreted the least sophisticated consumer standard in a way that protects debt collectors from liability for unreasonable misinterpretations." Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010).

reading such language in its entirety, would believe that the sender was attempting to induce payment on a debt.

"Obviously communications that expressly demand payment will almost certainly have [an animating] purpose" of "induc[ing] payment by the debtor." Grden, 643 F.3d at 173 (citations omitted). A demand for payment can also be implicitly made. Pinson, 618 F. App'x at 553-54; see also Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010) ("[T]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt."). In determining whether a communication seeks to induce payment by way of an implicit demand, courts consider, among other factors, whether the communication "states the amount of the debt, describes how the debt may be paid, [and] provides the phone number and address to [which to] send payment." Pinson, 618 F. App'x at 553; see also Dyer, 108 F. Supp. 3d at 1282 (granting motion to dismiss where "none of the letters discussed specifics of the underlying debt, such as the terms of payment or deadlines").

In Helman v. Bank of America, the Eleventh Circuit did not alter the standard that the Court is to apply when examining debt collection activity as set forth above. The Court agrees that the parties in this case are in much of the same position as Helman; that is, that a debtor obtained a mortgage from a bank, debtor

declared bankruptcy, bank sought to collect on the debt following a bankruptcy discharge, bank allegedly knew that it had no such right because of the discharge, and therefore the bank was in violation of the FDCPA and FCCPA. But an examination of the mortgage statement language in <u>Helman</u> and those in this case reveal that that there is little similarity between the communications.[5]

In <u>Helman</u>, the monthly statements contained the following language:

**FOR INFORMATION PURPOSES**

. . . .

**The Impact of the Bankruptcy**: Our records indicate that in the past you received a discharge of this debt in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met.

685 F. App'x at 728. The court there found that "*under the circumstances of this case* the express language of the home mortgage monthly statement could not be clearer," and that a least sophisticated consumer "reading the notice with some care, would

---

[5] Bayview has attached a copy of the offending home equity line of credit statement from the <u>Helman</u> case (Doc. #15-4) and requests that the Court take judicial notice of the statement without converting the motion into one for summary judgment. (Doc. #1, n.8.) The Court sees no objection from plaintiff but judicial notice is largely unnecessary because the statements are explained in a fair amount of detail in the <u>Helman</u> decision.

be informed that she (1) has no personal obligation to repay the debt; (2) is not personally liable for the debt; and (3) cannot be pressured to repay the debt." 685 F. App'x at 728 (emphasis added). The court also found that the language in the home equity line of credit statement[6] was a closer call, but this was not the only information available to the debtor, and coupled with the monthly statement, a least sophisticated consumer would not believe she was personally liable for the debts. Id. at 728-29.

In contrast, the Mortgage Statement at issue in this case contains the following language:

> **Bankruptcy Notice**
> Our records reflect that you are presently a debtor in an active bankruptcy case or you previously received a discharge in bankruptcy. This statement is being sent to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally. However, we retain our rights under the security instrument, including the right to foreclose our lien.

(Doc. #1-8.) Under the heading "Delinquency Notice," the Mortgage Statement states: "You are late on your mortgage payments. Failure to bring your loan current may result in fees and

---

[6] **If You Are Currently a Debtor in Bankruptcy**:
This statement is being furnished for informational purposes only and should not be construed as an attempt to collect against you personally. While your obligation to Bank of America, N.A. may be discharged, by operation of law, Bank of America, N.A. has retained the ability to enforce its rights against the property securing this loan should there be a default.

685 F. App'x at 729.

- 10 -

foreclosure – the loss of your home.  As of 3/16/17 you are 3180 days delinquent on your mortgage." (Id.)  There is also a payment coupon, with a total amount due of $135,960.34, stating: "If you are currently a party in a bankruptcy case and you choose to make a voluntary payment, detach and return bottom remittance portion with your payment." (Id.)

Unlike Helman, the Court is unable to conclude under the circumstances of this case that the cumulative effect of the Mortgage Statement's language from the perspective of the least sophisticated consumer would not be seen as an attempt to collect a debt for which personal liability had already been discharged. The statements are not similar to the language the Helman court was presented with.  The language in Helman expressly stated that the debtor had no personal obligation to repay the debt and no one could force her to do so.  No language even remotely resembling the same was used in this case.  Therefore, the Court declines to follow the result reached in Helman as defendant urges here.  The Court is convinced that the Complaint sufficiently alleges that the Mortgage Statement constitutes an attempt to collect a debt.

The Court's conclusion is amply supported by case law and Helman did not change this.  The Pinson court determined that two letters "contained an implicit demand for payment, because they stated the amount of the debt, described how the debt could be paid, and informed [the plaintiff] how he could tender payment."

618 F. App'x at 554. In <u>Leahy-Fernandez v. Bayview Loan Servicing, LLC</u>, mortgage statements were deemed communications sent in an attempt to collect a debt where they listed a total amount due, contained a payment coupon, mentioned other payment options, and stated that a fee would be charged for late payments. 159 F. Supp. 3d 1294, 1303-04 (M.D. Fla. 2016). Similarly, in <u>Patton v. Ocwen Loan Servicing, LLC</u>, the plaintiff sufficiently alleged that the defendant's written communication attempted to collect a debt, despite the presence of "for informational purposes only" language, because the statement included a due date, the past due amount, a payment address, and a detachable payment coupon. No. 6:11-CV-445-ORL-19, 2011 WL 1706889, at *5 (M.D. Fla. May 5, 2011); <u>see also</u> <u>Goodin v. Bank of Am., N.A.</u>, 114 F. Supp. 3d 1197, 1206 & n.10 (M.D. Fla. 2015) (letters containing payment instructions, a due date, and an amount due had animating purpose of encouraging payment despite being labeled "FOR INFORMATION PURPOSES" and containing disclaimer language).

Just because a disclaimer says that the communication "'is not an attempt to collect a debt,' does not make that true, especially in view of indications on the face of the document that the communication is intended to obtain money and is connected to a present or former obligation to pay an indebtedness." <u>Donnelly-Tovar v. Select Portfolio Servicing, Inc.</u>, 945 F. Supp. 2d 1037, 1048 (D. Neb. 2013). Here, the Mortgage Statement does contain

such indications and Bayview's boilerplate, hypothetical disclaimer language is immediately followed by a "however" clause reserving Bayview's legal rights. It is thus plausible (if not probable) that the least sophisticated consumer reading the disclaimer would *not* understand that she could refrain from making payments without incurring additional fees or exposing herself to future legal action. Rather, she would feasibly be induced to make payments to avoid those repercussions.

Defendant further argues that dismissal is warranted because Lilly's bankruptcy discharge informed her that it "prohibited any attempt to collect a debt that had been discharged but that a creditor may have the right to enforce a valid lien such as a security interest after bankruptcy, if that lien was not avoided or eliminated," which is consistent with Bayview's right to seek payment under 11 U.S.C. § 524. Yet this is just one factor that goes into the Court's consideration of whether a consumer would have been misled by the statements. Helman, 685 F. App'x at 727-28. But more significant than this is the language used in the Monthly Statements themselves which the Court believes could have been misleading despite the assurances she was given with her discharge.

**B. Pre-Suit Notice and Opportunity to Cure**

Defendant alternatively argues that even if the Court finds that Helman is not dispositive of this suit, dismissal is still

warranted because she failed to allege that she complied with her mortgage's notice and opportunity to cure provision prior to filing this lawsuit, a condition precedent to which she is contractually bound. Yet none of the cases cited by defendant involve a situation in which the debtor has obtained a discharge of the debt in bankruptcy. A discharge order enjoins creditors from taking action to collect on any discharged debt and defendant otherwise sites no authority for the proposition that a debtor would still be bound by the provisions of that discharged debt. Therefore, the Motion to Dismiss on this basis is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss (Doc. #15) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this \_\_4th\_\_ day of October, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record